## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

SHATTUCK BANCSHARES, INC.,
AND SNB BANK, N.A.

      Plaintiffs,

v.

ERIC HANNELIUS, MICHAEL SHVARTSMAN,
OKSANA MOORE, KARLA KNIGHT, ELENA
POPOVA, JUSTIN SOULEN, BILL MY BNK, LLC,
BT ASSETS GROUP, INC., EFT BUSINESS
SERVICES, LLC, ENCOMPAY, INC.,
HANNELIUS-KNIGHT FAMILY TRUST, MG
FAMILY TRUST, OST, LLC, PEPPER PAY, LLC,
ROCKET HOLDINGS, LLC, SALT MONEY, INC.,
SKYLIGHT BUSINESS SERVICES, LLC,
TRANSACT FIRST, INC., AND TRANSACTION
PROCESSING SERVICES, INC.,

      Defendants.

Case No.: 1:24-cv-24782-RAR

## DEFENDANTS' JOINT MOTION
## TO DISMISS PLAINTIFFS' AMENDED COMPLAINT, OR, ALTERNATIVELY, FOR
## A MORE DEFINITE STATEMENT

Pursuant to Rules 8, 9, 10, and 12(b)(6) of the Federal Rules of Civil Procedure,

Defendants, Eric Hannelius ("Hannelius"), Michael Shvartsman ("Shvartsman"), Oksana Moore

("Moore"), Karla Knight ("Knight"), Elena Popova ("Popova"), Justin Soulen ("Soulen"), Bill My

Bank, LLC ("BMB"), BT Assets Group, Inc. ("BTAG"), EFT Business Services, LLC ("EFT"),

Encompay, Inc. ("Encompay"), Hannelius-Knight Family Trust ("HK Trust"), MG Family Trust

("MG Trust"), OST, LLC ("OST"), Pepper Pay, LLC ("PP"), Rocket Holdings, LLC ("RH"), Salt

Money, Inc. ("SM"), Skylight Business Services, LLC ("SBS"), Transact First, Inc. ("TF"), and

Transaction Processing Services, Inc. ("TPS"), hereby move to dismiss Plaintiffs' Amended Complaint.[1]

Alternatively, pursuant to Federal Rule of Civil Procedure 12(e), Defendants move for a more definite statement due to the vagueness or ambiguity in the Amended Complaint.

In support of this Motion, Defendants provide as follows:

## I.       INTRODUCTION

Plaintiffs have sued ***nineteen*** Defendants in a nine-count complaint alleging numerous contractual, tort and statutory causes of action under both Florida and Oklahoma law. Dismissal of the Amended Complaint is necessary for multiple reasons.

First, Plaintiffs' Amended Complaint is a classic, impermissible shotgun pleading. Except for Count III, which is pled only against Defendant PP, the remaining Eight Counts fail to specify which of the Defendants are responsible for which acts or omissions, or which of the Defendants the specific Count in question is being brought against. For example, although the crux of Plaintiffs' complaint appears to be premised on the repeated allegation that "certain" of the Corporate Defendants operated marijuana related businesses, and that this allegation, if true, constituted a breach of contract and fraud, the Complaint never specifies which of the Corporate Defendants are those "certain" ones to which Plaintiffs refer, and, thus, which of the Corporate

---

[1]   When this Motion refers to the "Defendants" it is referring collectively to all of the Defendants. The Individual Defendants, Hannelius, Shvartsman, Moore, Knight, Popova and Soulen will be referred to collectively herein as (the "Individual Defendants").  The Trust Defendants, HK Trust and MG Trust, will be referred to collectively herein as (the "Trust Defendants"). The remaining Defendants, BMB, BTAG, EFT, Encompay, OST, PP, RH, SM, SBS, TF and TPS will be referred to collectively herein as (the "Corporate Defendants").

Defendants allegedly breached their contracts or committed fraud.[2] Although Defendants might be able to make an educated guess regarding which Defendants are the "certain" ones at issue, Plaintiffs need to do more, and Defendants should not be forced to plead based on a best guess.

Next, the two Trust Defendants, HK Trust and MG Trust, are not proper Defendants because these Trusts lack the capacity to be sued. Rather, when a trustee makes a contract on behalf of a trust and a cause of action arises thereon, the Plaintiffs may sue the Trustee in his or her representative capacity, but they do not sue the Trusts themselves.

In addition to being difficult to work through given the shotgun nature of Plaintiffs' Amended Complaint,[3] many of the individual Counts are also conclusory and fail to state claims upon which relief can be granted. This is in addition to the fact that Counts IV, V, and VI are barred by the independent tort doctrine. These realities also mandate dismissal.

Regarding the statutory claims, applying the rules of Legislative Jurisdiction to Plaintiffs' claim under Oklahoma's Deceptive Trade Practices Act mandates dismissal of that claim on behalf of the Individual Defendants. This claim is also barred because Plaintiffs and Defendants are not competitors, and such competition is necessary to state a claim under the statute in question. In terms of the alleged violation of Florida's Deceptive and Unfair Trade Practices Act, it must be

---

[2] Although Plaintiffs' allegations, however vague, are to be taken at face value at the pleading stage, Defendants question how Plaintiffs' can allege in good faith that several of the corporate Defendants operated marijuana related business, when, in fact, many of them do not.

[3] Due to the "shotgun" nature of Plaintiffs' Amended Complaint, it is difficult to fully address the potential bases for dismissal of each of the individual Counts. While Defendants do their best to address those issues herein, should the Court grant dismissal based on the Amended Complaint being a "shotgun" pleading and not proceed further in its analysis, Defendants reserve the right to more fully address any pleading deficiencies of the individual Counts, as they become more apparent, in any subsequent pleading.

dismissed because Plaintiffs do not even clearly identify which Defendants the claim is brought against and how it would specifically apply to those Defendants.

## II.   THE AMENDED COMPLAINT SHOULD BE DISMISSED AS AN IMPERMISSIBLE SHOTGUN PLEADING.

Plaintiffs' Amended Complaint is an impermissible "shotgun pleading" because it inappropriately lumps all Defendants together in many of the alleged causes of action without indicating which Defendant committed which alleged wrongs. Dismissal is required as a result.

All federal pleadings must include "short and plain" statements of the plead claims set forth in "numbered paragraphs, each limited as far as practicable to a single set of circumstances," and "[i]f doing so would promote clarity, each claim founded on a separate transaction or occurrence ... must be stated in a separate count." *See* Fed. R. Civ. P. 8(a), 10(b). Allegations must be "simple, concise, and direct" and not mere labels, legal conclusions, or formulaic recitations of elements. Fed. R. Civ. P. 8(d)(1); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555-57 (2007); *Ashcroft v. Iqbal,* 556 U.S. 662, 681 (2009).

Complaints blurring the lines between the facts and claims to which they apply or that lump together parties and non-parties are facially deficient "shotgun pleadings" that are properly dismissed on this basis alone. The Eleventh Circuit has made this clear:

> A complaint constitutes an impermissible shotgun pleading if it "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." The problem with this kind of pleading is that it fails "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." Pleadings of this nature violate the requirement that a plaintiff provide "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2). *Weiland*, 792 F.3d at 1320–22; *see also Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (explaining that Rule 8(a)(2) exists to "give the defendant fair notice of what the claim is and the grounds upon which it rests[.]"

*Auto. Alignment & Body Serv., Inc. v. State Farm Mut. Auto. Ins. Co.*, 953 F.3d 707, 732 (11th Cir. 2020) (internal citations omitted) (internal quotation marks provided); *See also, Weiland v. Palm Beach Cty. Sherriff's Office*, 792 F.3d 1313, 1323 & n. 14 (11th Cir. 2015) (describing this type of "shotgun pleading" as the "sin" of "asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omission").

Turning to the immediate case, with the exception of Count III (which is pled only against Defendant PP) Plaintiffs' Amended Complaint contains eight causes of action that lump all **_nineteen_** Defendants together and fail to give Defendants fair notice of the specific claims or allegations that pertain to them. Indeed, the Amended Complaint in this case is identical to the Amended Complaint dismissed by Judge Altonaga as an impermissible shotgun pleading in *Global Paycard Corporation v. Onecom LLC,* 2023 WL 11883728 (S.D. Fla. July 24, 2023), wherein the Corut stated:

> Plaintiff fails to clearly identify which causes of action correspond to which Defendants. The claims repeatedly include factual allegations regarding only a subset of Defendants but refer to "Defendants" in the aggregate. (*See, e.g.*, FAC ¶¶ 71–78, 84–87). This is insufficient to provide each Defendant with notice of the claim or claims against it. *See Weiland*, 792 F.3d at 1323; *see also Magluta*, 256 F.3d at 1284.

*Id*. at *2.

The inability of Defendants to distinguish "what" Plaintiffs specifically seek and from or "whom" they seek it extends even to Plaintiffs' overall Prayer for Relief, in that Plaintiffs fail to specify which alleged damages or requests for relief apply to which causes of action and/or which Defendants. This "sin" in pleading makes it virtually impossible for Defendants to determine what damages and/or specific relief is being sought against each of them independently.

Because Plaintiffs' Amended Complaint constitutes an impermissible "shotgun pleading," it should be dismissed.

### III.   THE TRUST DEFENDANTS ARE NOT PROPER PARTIES AND LACK THE CAPACITY TO BE SUED.

Plaintiffs' claims against the Trust Defendants, HK Trust and MG Trust, must be dismissed because a trust lacks the capacity to be sued.

Because the HK Trust and MG Trust are neither individuals nor corporations, their capacity to be sued is determined by Federal Rule of Civil Procedure 17(b)(3), which states that the Court should look to the law of the State where the Court is located, i.e., Florida law in this instance. Applying Florida law, Courts in this District have specifically held that trusts lack the capacity to be sued other than through their trustee, and the trust is not a proper party defendant as a result:

> Plaintiffs' claims against the Trust must be dismissed because Plaintiffs cannot state a claim against the Trust except through its trustee…. Here, the Trust argues, and Plaintiffs admit, that under Florida law, a trust cannot be sued except through its trustee. ECF Nos. [131] at 3–5; [28] at 2 n.2; [134] at 2–3; *see also, e.g.*, *Alliant Tax Credit 31, Inc v. Murphy*, 924 F.3d 1134, 1143 (11th Cir. 2019) (citing *Raymond Loubier Irrevocable Tr. v. Loubier*, 858 F.3d 719, 731 (2d Cir. 2017), for the proposition that "under Florida law, a trust [is] not a 'distinct juridical entit[y]' and thus [is] 'incapable of being haled into court except through [its] trustee'") (alterations in original). As such, the Trust's trustee is the proper party defendant for claims against the Trust.

*Muller v. Zaibet*, No. 23-CV-22276-JB, 2024 WL 4483322, at *2 (S.D. Fla. July 25, 2024).

Plaintiffs run afoul of this requirement/limitation here. Resultingly, all claims against the HK Trust and MG Trust should be dismissed, and those Trusts must be dropped as Parties. Because amendment of any claim against the Trusts would be futile, the dismissal as to the HK Trust and MG Trust should be with prejudice. *Chiron Recovery Ctr., LLC v. United Healthcare Services, Inc.*, 438 F. Supp. 3d 1346, 1356 (S.D. Fla. 2020) ("A court may also dismiss a case with prejudice

when amendment would be futile.") (citing *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999)).

## IV.    THE INDIVIDUAL COUNTS FAIL TO STATE CLAIMS UPON WHICH RELIEF CAN BE GRANTED.

### A.  Choice of Law

Unfortunately, and in a way that creates way more confusion than clarity, Plaintiffs have alleged that every claim other than the statutory ones occurred "in violation of Oklahoma and Florida law." *See* Amended Complaint at ¶¶ 154, 166, 173, 179, 199, 218, and 229. Accordingly, it appears that a choice of law analysis will prove necessary at some point in time. As this is a diversity case, "the court is bound to apply state substantive law and federal procedural law." *Calixto v. Watson Bowman Acme Corp.*, 637 F. Supp. 2d 1064, 1066 (S.D. Fla. 2009) (citations omitted). It should also apply Florida conflict of law rules, as the state in which the Court sits. *See Klaxon Co. v. Stentor Electric Mfg. Co., Inc.*, 313 U.S. 487, 496 (1941) (holding that a district court is to apply the conflict of laws rules of the state in which it sits). "Florida applies the 'most significant relationship' test, as set forth in the Restatement (Second) of Conflict of Laws." *Calixto*, 637 F. Supp. 2d at 1066 (citations omitted). Courts applying the most significant relationship test consider the following four factors: 1) the place where the injury occurred; 2) the place where the conduct causing the injury occurred; 3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and 4) the place where the parties' relationship is centered. *Id* at 1066–67. As these four areas of focus makes clear, a choice of law determination is often fact specific. *See id generally* (noting that the Court had two times declined to determine what substantive law applied "because the factual record was insufficient for such a determination" and ultimately making that ruling on third request).

The problem here is there does not appear to be enough information for the Court to definitively make a choice of law determination at this juncture. And, because such a determination has not yet been made, Defendants have utilized references to both Florida and Oklahoma substantive law during the course of this Motion. The Court, however, should make a choice of law determination at the earliest time possible, as it will no doubt simplify matters on a moving forward basis, and Defendants reserve the right to request such from the Court and to raise any arguments related thereto at the appropriate time.

## B. Counts I and II, Alleging Breach of Contract, Fail to State a Claim against Any of the Defendants.

### i. The Individual Defendants

Corporations and their owners have a separate and distinct legal existence from one another. *Anagnos v. Nelsen Residence, Inc.*, No. 214CV350FTM38DNF, 2015 WL 12915688, at *2 (M.D. Fla. June 18, 2015), *report and recommendation adopted,* No. 214CV350FTM38MRM, 2015 WL 12915690 (M.D. Fla. July 8, 2015) ("It is black-letter law that a corporation is a 'separate entity, a legal being having an existence separate and distinct from that of its owners.") (citation omitted); *McCall v. Chesapeake Energy Corp.*, 164 P.3d 1120, 1127 (Okla. Civ. App. 2007) ("The general rule is that a corporation is a distinct legal entity separate and apart from other legal entities or stockholders.") (citation omitted). This separate and distinct concept applies to a company's employees as well. *Corp. Exp. Office Products, Inc. v. Phillips*, 847 So. 2d 406, 411 (Fla. 2003) (quoting from *Cedric Kushner Promotions, Ltd. v. King,* 533 U.S. 158 (2001) as follows: "The corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status."); *Hulme v. Springfield Life Ins. Co.*, 1977 OK 108, ¶ 15, 565 P.2d 666, 670 ("Hulme is the president and

principal stockholder of the corporation. The individual and corporation are two distinct legal entities that are separate and apart. That distinction should not be ignored unless there is a design or scheme to perpetrate a fraud."). Moreover, "a contract made with a known agent for a disclosed principal is a contract with the principal alone." *Tyree v. Cornman,* 453 P.3d 497, 504 (Okla. Civ. App. 2019) (quoting *Bane v. Anderson, Bryant & Co.*, 786 P.2d 1230, 1234 (Okla. 2019)); *Sussman v. First Fin. Title Co. of Florida*, 793 So. 2d 1066, 1068 (Fla. 4th DCA 2001) ("an agent acting within the course and scope of its agency relationship with a disclosed principal is not liable for the debts or obligations of the principal arising from contracts which the agent may negotiate or execute on behalf of such disclosed principal."). In that regard, "[i]t is well settled that a corporation's officer is not liable for a corporation's contracts unless he or she 'signed in an individual capacity, or unless the corporate veil was pierced or the corporate entity should be ignored because it was found to be formed or used for fraudulent purposes, or where the corporation was merely the alter ego of the shareholder.'"). *SIG, Inc. v. AT & T Digital Life, Inc.*, 971 F. Supp. 2d 1178, 1191 (S.D. Fla. 2013); *Seitsinger v. Dockum Pontiac Inc.*, 1995 OK 29, ¶ 10, 894 P.2d 1077, 1080 ("The only way a corporation can act is through its officers, directors and employees. To permit liability when the officer is acting within the scope of the corporation would be, in essence, a total disregard of the corporate entity.").

Of initial import here, Plaintiffs do not plead that any of the Individual Defendants actually contracted with Plaintiffs. While Plaintiffs make all sort of claims related to the alleged breach (*see* Amended Complaint at ¶154), missing is the contracts that each of the Individual Defendants "formed" with Plaintiff, SNB. That mandates dismissal of the Individual Defendants.

Even when looking at the Account Agreement attached as Exhibit "A" to the Amended Complaint, it only bears a signature of Defendants, Hannelius and Moore. Plaintiffs have not presented within their Amended Complaint an Account Agreement executed by any of the other Individual Defendants, another basis for their dismissal. As for Hannelius and Moore, it is clear that their signing was in a corporate capacity, not an individual one. Again, liability under such circumstances is corporate, not individual. *SIG, Inc.*, *supra*; *Seitsinger*, *supra*.

To the extent Plaintiffs are seeking to pierce the corporate veils of the Corporate Defendants to pursue their breach of contract claims against the Individual Defendants, Plaintiffs allegations are woefully deficient:

> To establish a claim for piercing the corporate veil under Florida law, a plaintiff must allege that "(1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact non-existent and the shareholders were in fact alter egos of the corporation; (2) the corporate form [was] used fraudulently or for an improper purpose; and (3) the fraudulent or improper use of the corporate form caused injury to the claimant." Molinos, 633 F.3d at 1349 (quoting Gasparini v. Pordomingo, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008)); see also Johnson Enterprises of Jacksonville, Inc. v. FPL Grp., Inc., 162 F.3d 1290, 1320 (11th Cir. 1998).[] Because the veil-piercing elements under federal common law are substantially similar, the Court need not engage in a choice of law analysis at this stage to determine whether Florida law or federal common law governs the alter ego analysis.

*Alvarez Galvez v. Fanjul Corp.*, 533 F. Supp. 3d 1268, 1284 (S.D. Fla. 2021) (internal footnote omitted).[4]

---

[4] In Oklahoma, the corporate "fiction may be avoided if it is established that the separate corporate existence is a design or scheme to perpetuate a fraud or where a corporation is so organized and controlled and its affairs so conducted that it is merely an instrumentality or adjunct of another." *Oklahoma Oil & Gas Expl. Drilling Program 1983-A v. W.M.A. Corp.*, 877 P.2d 605, 609 (Okla. Civ. App. 1994).  This, too, has not been pled.

Here, Plaintiffs do not allege that any of the Individual Defendants were alter egos of any of the Corporate Defendants. Rather, Plaintiffs repeatedly allege that the Individual Defendants were acting in their capacities as agents of the Corporate Defendants. Again, dismissal of the Individual Defendants is necessary.

### ii.   The Corporate Defendants

With respect to the Corporate Defendants, Counts I and II do not allege any specific breaches against Corporate Defendants, BMB, BTAG, OST, PP, RH, SM, SBS, or TPS. The only Corporate Defendants identified by name in Counts I and II are EFT, TF and Encompay. This, again, highlights the problems with the "shotgun" nature of Plaintiffs' Amended Complaint. While Plaintiffs identify EFT, TF and Encompay by name, these counts also repeatedly and vaguely refer to "certain" Defendants, without specifying who those "certain" ones are. *See, e.g.*, Amended Complaint [DE 88] at ¶¶ 154, 158, 159, 160, 161, 162, 163, 164.

These vague allegations are insufficient to allege any breaches against the unnamed Corporate Defendants. Accordingly, Counts I and II should be dismissed as to Corporate Defendants BMB, BTAG, OST, PP, RH, SM, SBS, and TPS for failure to state a claim.

### C.  Plaintiffs Waived Their Breach of Contract Claims Against Pepper Pay.

Plaintiffs' third claim – breach of contract as to the Pepper Pay Agreement – fails to allege that Plaintiffs provided Pepper Pay any notice regarding any alleged breach as required by 12.16(a) of the Pepper Pay Agreement.

Section 12.16(a) provides that the failure to notify a party of a dispute in writing within sixty (60) days (or in this case, by January 1, 2024) "shall result in such matter being deemed undisputed and accepted by the Party." *See* Pepper Pay Agreement, § 12.16(a) [Doc. 88-3, p. 18]. Thus, Plaintiffs' failure to comply with the pre-suit notice requirement bars this claim.

Page 11 of 29

Under both Florida and Oklahoma law, if the "'language of a contract is clear and unambiguous on its face, that which stands expressed within its four corners must be given effect.'" *State ex rel. Doak v. Red Rock Insurance Company*, 444 P.3d 493, 495 (Okla. Civ. App. 2018) (citation omitted); *Hirsch v. Jupiter Golf Club LLC*, 232 F. Supp. 3d 1243, 1251 (S.D. Fla. 2017) (same test under Florida law). The plain and unambiguous language of section 12.16(a) means a matter is deemed undisputed and accepted by the complaining party if no notice is provided. *See e.g., Chicago, R.I. & P. Ry. Co. v. Gray*, 165 P. 157 (Okla. 1916) (explaining that a written contract containing a provision that, as a condition precedent to recovery of damages for any loss or injury to livestock, "a written notice must be given of such damage to a designated representative of the carrier within a day after delivery of the stock at its destination, such provision being reasonable and valid, the failure to give such notice is a complete bar to such action"); *Coin Laundry Equip. Co., Inc. v. Gilbert*, 597 So. 2d 926, 927 (Fla. 1st DCA 1992) (same analysis under Florida law).

Plaintiffs here allege Pepper Pay breached the Pepper Pay Agreement "by operating cashless ATMs which were expressly excluded from permitted ATM types." *See* Amended Complaint at ¶173. Plaintiffs then allege that "[o]n the morning of November 2, 2023," they discovered "for the first time that 50% of the ATMs involved in [Pepper Pay's] business were cashless ATMs." *See* Amended Complaint at ¶137. Therefore, pursuant to section 12.16(a) of the Agreement, a "dispute" arose on November 2, 2023, and Plaintiffs had sixty (60) days to notify Pepper Pay of such dispute in compliance with Section 12.11,[5] so the parties could proceed with

---

[5] Section 12.11 requires "[a]ll notices, requests and approvals required by this Agreement shall be in writing addressed/directed to the other Party" at their respective addresses provided in the Agreement. *See* Pepper Pay Agreement, § 12.11 [Doc. 88-3, p. 17].

resolution under section 12.16(b) (informal negotiation to resolve dispute) and, if necessary, mandatory arbitration under 12.16(c).

Because Plaintiffs failed to plead or otherwise show compliance with the Agreement's notice provision, the dispute was "deemed undisputed and accepted" by Plaintiffs on January 2, 2024. Pepper Pay Agreement, § 12.16(a). Such failure constitutes a complete bar to the claim in question. Count III of the Amended Complaint should be dismissed accordingly.

### D. The Fraud and Negligent Misrepresentation Allegations in Counts IV, V and VI Fail to State Claims against Many of the Defendants.

#### i. Plaintiffs' Amended Complaint lacks the requisite specificity required by Federal Rules of Civil Procedure 8 and 9.

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "Rule 9(b) is satisfied if the complaint sets forth '(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.'" *Ziemba v. Cascade Intern., Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (citation omitted); *see also U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1357 (11th Cir. 2006) ("Particularity means that 'a plaintiff must plead 'facts as to time, place, and substance of the defendant's alleged fraud,' specifically 'the details of the defendant['s] allegedly fraudulent acts, when they occurred, and who engaged in them.'").

The same heightened pleading requirements also apply to a claim of negligent misrepresentation. *Woodley v. Royal Caribbean Cruises, Ltd.*, 472 F. Supp. 3d 1194, 1206 (S.D.

Fla. 2020) ("To satisfy Rule 9(b) in a negligent misrepresentation claim, 'the Complaint must set forth particular allegations about the 'who, what, when, where, and how' of the fraud.'"); *see also Chapman v. Abbott Labs.*, 930 F. Supp. 2d 1321, 1324 (M.D. Fla. 2013) (recognizing that the "heightened pleading requirement [of Fed.R.Civ.P. 9(b)] applies to actions for negligent misrepresentation brought pursuant to Florida law.").

Although Defendants deny that any of them committed fraud or negligent misrepresentations, subject to the reality that dismissal of all Defendants is required due to application of the independent tort doctrine (*see* discussion, *infra*), Defendants recognize that Counts IV, V and VI at least plead the *prima facie* elements for fraud and negligent misrepresentation against Individual Defendants, Moore and Hannelius, and against Corporate Defendants, EFT, TF and Encompay. As to the remaining Defendants, though, these Counts are woefully deficient, as none of the remaining Defendants are mentioned by name anywhere in these Counts, and there is no way for Defendants to ascertain which Defendants made which alleged misrepresentations, or on behalf of which corporate entities such misrepresentations may have been made. Under Rule 9(b), setting forth this information was a pleading obligation of Plaintiffs. They have failed to meet it.

Indeed, with respect to the other Individual Defendants and Corporate Defendants who are not specifically named in Counts IV, V or VI, these Counts merely refer repeatedly to the "Individual Defendants,"[6] generally, or "certain"[7] Business Defendants, generally. This is improper.

---

[6] *See e.g.*, Amended Complaint [DE 88] at ¶¶ 179, 180, 181, 182, 218, 219, and 220.

[7] *See e.g.*, Amended Complaint [DE 88] at ¶¶ 179, 180, 184, 218, 219, and 221.

Plaintiffs' vague references to "Individual Defendants" and "Certain" Business Defendants are inadequate in the fraud and negligent misrepresentation context and are grounds enough for dismissal.[8] *Circuitronix, LLC v. Shenzen Kinwong Elec. Co., Ltd.*, No. 17-CV-22462-UU, 2018 WL 7287192, at *7 (S.D. Fla. Jan. 31, 2018) ("The Amended Complaint lumps Defendants together with respect to each and every allegation. Accordingly, the Complaint falls short of Rule 9(b)'s requirements.") (c*iting Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1381 (11th Cir. 1997) for "holding that lumping defendants together rendered RICO claims "subject to dismissal without prejudice for failure to plead fraud with the requisite specificity as to each of the Defendants under Rule 9(b)").

Reference to the pre-Count paragraphs in the Amended Complaint also does not save Plaintiffs Amended Complaint. Specifically, while Plaintiffs allege that Individual Defendants Knight, Moore, Shvartsman, Soulen and Popova made statements that "certain" Defendants were not involved in marijuana-related businesses and that Corporate Defendants, BMB, BTAG, OST, PP, RH, SM, SBS, and TPS made similar representations, the Amended Complaint does not allege that, with respect to any specifically identified Corporate Defendants, such representation was inaccurate.

---

[8]  While this is a procedural, pleading requirement governed by the law in the Eleventh Circuit irrespective of which state law applies, it is interesting to note that the end result of dismissal would be the same before a Federal Court in Oklahoma. *See, e.g., Transportation Alliance Bank, Inc. v. Arrow Trucking Co.*, No. 10-CV-16-GKF-PJC, 2011 WL 221863, at *4 (N.D. Okla. Jan. 21, 2011) ("Where fraud is alleged against multiple defendants, the specifics of the alleged fraudulent activity of each defendant must be set forth.") (citations and quotations omitted); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (dismissing Plaintiff's claims because "the complaint's use of either the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom" made it "impossible for any [defendant] to ascertain what particular . . . acts they are alleged to have committed").

Plaintiffs know that not all of the Corporate Defendants in this case were involved in marijuana-related businesses. Maybe this is the reason they fail to make allegations with particularity here; maybe it's not. Either way, though, Plaintiffs' never allege for which Corporate Defendants the claimed statements were false or even which of the Corporate Defendants were, and which were not, involved in marijuana-related businesses. That pleading failure falls well short of the finish line required under Fed.R.Civ.P. 9(b) and mandates dismissal.[9]

While the same dismissal outcome is mandated as to Individual Defendants, Shvartsman, Popova, and Knight, the problem is glaringly obvious (as opposed to being under an attempted cover of "certain") when considering Individual Defendant, Justin Soulen. Specifically, Defendant Soulen is only identified in three (3) paragraphs of the Amended Complaint.  He is listed along with the Defendants in summary paragraph 4, which identifies the claims; he is named in paragraph 12, which pleads that he is a U.S. Citizen and resides in Florida, and he is identified in paragraph 67, where it is alleged that he represented to SNB that defendant Pepper Pay, LLC was not a marijuana-related business. The Amended Complaint does not link Mr. Soulen with any other individual or corporate defendant – just Pepper Pay.

This mere allegation begs the question: Is Pepper Pay a marijuana-related business? While one might expect this question to be answered by the Amended Complaint in the affirmative to support the fraud allegation, it is not answered at all. If the Amended Complaint's sole allegation against Mr. Soulen is that he made a statement about Pepper Pay not being marijuana-related, and

---

[9] This is just another example of the problems arising from Plaintiffs' "shotgun" approach to its Amended Complaint.

the Complaint does not allege that Pepper Pay is marijuana-related, then where is the fraud or negligent misrepresentation?  To ask this question is to answer it: There is none.

The allegations against Shvartsman, Knight and Popova suffer from the same flaw. None of these Individual Defendants is alleged to have made representations on behalf of ***all the Corporate Defendants*** and none of the Corporate Defendants for whom they did make representations are specifically alleged to be involved in marijuana-related business.

Accordingly, for the reasons discussed above, Counts IV, V, and VI of the Amended Complaint must be dismissed with respect to the following Individual Defendants (Shvartsman, Popova, Knight and Soulen) and the following Corporate Defendants (BMB, BTAG, OST, PP, RH, SM, SBS, and TPS) for failure to comply with the heightened pleading requirements of Fed. R. Civ. P. 8 and 9(b).

> **ii.  Plaintiffs' Fraud and Negligent Misrepresentation Claims are Contradicted by the Exhibits to the Amended Complaint.**

It is a settled rule in the Eleventh Circuit that "when exhibits attached to a complaint 'contradict the general and conclusory allegations of the pleading, the exhibits govern.'" *Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 514 (11th Cir. 2019); *See also Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016). ("[I]f the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls."). "The classic example is when a plaintiff attaches a document to his complaint but his allegations about what the document is or says contradict the document itself." *Gill as Next Friend of K.C.R.*, 941 F.3d at 514.

Turning to the Amended Complaint here, the only fraud and negligent misrepresentation allegations against Soulen, Shvartsman, Knight and Popova are that they were representatives of

some of the Corporate Defendants that signed questionnaires when the Corporate Defendants opened accounts and that they misrepresented that "certain" of the Corporate Defendants were not in the marijuana/cannabis related business. Exhibit "R" to Plaintiffs' Amended Complaint, however, shows that the Plaintiffs' Vice President/Cashier confirmed that the signors to the account questionnaires should answer "no" to the question about being a "Marijuana/Cannabis Related Business" if the companies were not "plant-touching in any capacity." *See* Amended Complaint, Exhibit "R" [Doc. No. 88-18]. Thus, while Plaintiffs allege that these Individual Defendants falsely represented that the Corporate Defendants were not "marijuana-related" businesses, Plaintiffs' own exhibit shows that this was not the question these Individual Defendants were asked to answer. Rather, the question they were instructed to answer was more specific: whether the Corporate Defendants were "plant touching."

Plaintiffs do not allege that Soulen, Shvartsman, Knight or Popova falsely represented that the corporate defendants were not "plant-touching." Nor do they allege that these Individual Defendants intended for them to believe anything other than that the Corporate Defendants were not "plant-touching." Plaintiffs certainly cannot show that they relied on a representation that the Corporate Defendants had no relation to the marijuana industry when, in fact, they told them that was not the representation they were making on the questionnaire. *See* Amended Complaint at Exhibit "R."

Because Exhibit "R" contradicts the vague and conclusory allegations of the Amended Complaint regarding the alleged misrepresentations, Exhibit "R" controls, and Counts IV, V and VI should be dismissed. Because amendment here would be futile, such dismissal should be with prejudice. *Chiron Recovery Ctr., LLC*, *supra*.

### iii.     Plaintiffs' Fraud and Negligent Misrepresentation Claims are Barred by the Independent Tort Doctrine.

To start, "it is well settled that a plaintiff may not recast causes of action that are otherwise breach-of-contract claims as tort claims." *BluestarExpo, Inc. v. Enis*, 568 F. Supp. 3d 1332, 1353 (S.D. Fla. 2021) (quotations in original) (citation omitted); *see also Pastor v. Bank of Am., N.A.*, 664 F. Supp. 3d 1365, 1367 (S.D. Fla. 2023) ("the [independent tort] doctrine prohibits a claimant from 'repackaging breach of contract claims as independent actions in tort.'") (cleaned up). The controlling question is not how the Plaintiff characterizes its claim, but whether the claim actually amounts to an independent tort. *Kaye v. Ingenio, Filiale De Loto-Quebec, Inc.*, 13-61687-CIV, 2014 WL 2215770, at *5 (S.D. Fla. May 29, 2014) ("Although Kaye attempts to characterize his claim as sounding in fraud, the factual allegations reveal nothing more than a purported breach of contract."); *Hotels of Key Largo, Inc. v. RHI Hotels, Inc.*, 694 So. 2d 74, 77 (Fla. 3d DCA 1997) (Court looks at the "substance of the claim," not the "label placed on the claim").

To establish an independent tort claim for fraud when the relationship is otherwise governed by contract, the alleged claim for fraud must be distinct from an alleged breach of contract or questions related to performance of the contract. *Kovalivker v. Team Real Estate Mgmt., LLC*, No. 18-21962-CIV, 2020 WL 3305674, at *5 (S.D. Fla. May 4, 2020) ("The Eleventh Circuit recently described the 'minimal requirement' for a fraudulent inducement claim to be independent from a breach of contract claim; namely, the fraud allegations must be 'separate and distinct' from a defendant's performance under the contract.") (certain internal quotations omitted) (citations omitted).[10] This also drives home the reality that there is a clear distinction between fraud in the

---

[10]   The requirement of an independent tort is the same under Oklahoma law. *See Multimedia Games, Inc. v. Network Gaming Int'l Corp.*, No. 98-CV-67-H(M), 1999 WL 33914442, at *7 (N.D. Okla. Sept. 3, 1999) ("[M]ere allegations of fraud in an action based solely in contract are

"inducement" of a contract and fraud in the "performance" of a contract. Specifically, "[m]isrepresentations relating to the breaching party's performance of a contract do not give rise to an independent cause of action in tort, because such misrepresentations are interwoven and indistinct from the heart of the contractual agreement." *Topp, Inc. v. Uniden America Corp.*, 513 F. Supp. 2d 1345, 1348–49 (S.D. Fla. 2007); *see also Peebles v. Puig*, 223 So.3d 1065, 1068 (Fla. 3d DCA 2017) ("[i]t is well settled in Florida that, where alleged misrepresentations relate to matters already covered in a written contract, such representations are not actionable in fraud"). This is true even if there are "allegations that the fraud induced the plaintiff to perform additional acts and incur additional expenses...." *Dantzler Lumber & Exp. Co. v. Bullington Lumber Co., Inc.*, 968 F. Supp. 1543, 1547 (M.D. Fla. 1997).

"It is [also] well settled that, for an alleged misrepresentation regarding a contract to be actionable, the damages stemming from that misrepresentation must be independent, separate and distinct from the damages sustained from the contract's breach." *Peebles*, 223 So.3d at 1068; *E-Prof'l Techs., LLC v. Primehealth of Illinois, Inc.*, No. 8:20-CV-338-SCB-SPF, 2022 WL 10040115, at *8 (M.D. Fla. June 15, 2022) ("Damages resulting from an independent tort also 'must be independent, separate and distinct from the damages sustained from the contract's breach.'"); *see also Dantzler Lumber & Exp. Co. v. Bullington Lumber Co., Inc.*, 968 F. Supp. 1543, 1547 (M.D. Fla. 1997) ("Florida courts have analyzed a defendant's fraudulent conduct in relation to the breach of contract and the distinction in damages between the fraud and the contract claim."); *Tyree v. Cornman*, 453 P.3d 497, 507 (Okla. Civ. App. 2019) (Further, the plaintiffs have

---

insufficient to state a cause of action based on fraud."); *KT Specialty Distribution, LLC v. Xlibris Corp.*, No. 08-CV-0249-CVE-SAJ, 2008 WL 4279620, at *4 (N.D. Okla. Sept. 11, 2008) ("[T]he wrong giving rise to a tort claim must be independent of the breach of contract.").

not alleged any damages caused by Brent that are recoverable only in tort. The absence of extra-contractual damages supports the absence of a negligence claim.").

The above rules apply, regardless of whether Plaintiffs are attempting to cast their claim as one of "fraud" or one of "negligent misrepresentation." *BluestarExpo, Inc.* 568 F. Supp. 3d at 1353 (applying independent tort doctrine to "claims for fraudulent and negligent misrepresentation").

Turning to the Amended Complaint, Plaintiffs' fraud and negligent misrepresentation claims are the same as their breach of contract claims. [*Compare* Amended Complaint at ¶ 158 (alleging the Individual Defendants breached contracts formed with SNB by "represent[ing] that certain Business Defendants were not marijuana-related businesses) *with* Amended Complaint at ¶¶ 180, 200, and 219 (alleging the Individual Defendants are liable for fraud, negligent misrepresentation and deceit for falsely "represent[ing] that certain Business Defendants were not marijuana-related")]; and [Amended Complaint at ¶ 163 (claiming approximately $8.4 million in wire transfers from December 2021" as part of allegation that "Certain Business Defendants also breached their contracts … by engaging in unauthorized transactions", and alleging the Individual Defendants breached contracts formed with SNB by "represent[ing] that certain Business Defendants were not marijuana-related businesses) *with* Amended Complaint at ¶¶ 180, 200, and 219 (alleging the Individual Defendants are liable for fraud, negligent misrepresentation and deceit for falsely "represent[ing] that certain Business Defendants were not marijuana-related") and ¶¶ 179, 186, 199, 206, 218 and 222 (discussing the same $8.4 million in wire transfers as underlying claims of fraud, negligent misrepresentation and deceit)]. Simply put, Plaintiffs do not allege a tort claim that is independent of their breach of contract claim.

In fact, Plaintiffs themselves even made their contracts part of the fraud, negligent misrepresentation, and deceit claims by, without necessarily limitation, contending: "Pursuant to the Terms and Conditions of Your Account §§ 2 and 3, the Defendants are liable for 'costs as well as for ... reasonable attorneys' fees.' Moreover, pursuant to the Terms and Conditions of Your Account § 32, SNB may charge certain Business Defendants' accounts for '[a]ny fees or expenses ... incur[red] in responding to any legal action.' *See* Amended Complaint at ¶¶ 184, (claim for fraud) 204 (claim for negligent misrepresentation), and 221 (claim for fraud and deceit).[11]

Finally, nowhere within the Amended Complaint do Plaintiffs assert they have suffered alleged tort damages that are "independent, separate and distinct from the damages sustained from the contract's breach." *Peebles*, *supra*; *E-Prof'l Techs., LLC*, supra. In fact, they allege to the contrary. *See* Amended Complaint at ¶¶ 190, 196, and 204 (citing the specific language in the contracts by which the corporate defendants may be liable for the same damages in tort); and ¶¶ 160 and 164 (referring to the same contractual provisions in Plaintiff's request for damages for breach of contract). Even Plaintiffs' overall "Prayer for Relief" appears to be a global one at the end of the Amended Complaint, presumably applying equally to all claims in contract or tort.

Based on the foregoing, Plaintiffs' Fourth, Fifth, and Sixth Claims for Fraud, Negligent Misrepresentation, and Fraud and Deceit should be dismissed.

---

[11] This same allegation is repeated in various other paragraphs within the specific accounts, merely changing the "Certain Business Defendants" to a named corporate Defendant, or in some cases even an individual Defendant. *See* Amended Complaint at ¶ 190 (mentioning Transact First in connection with Count IV), ¶ 196 (mentioning EFT, Transact First, and EnComPay in connection with Count IV), ¶ 210 (mentioning Transact First in connection with Count V), ¶ 216 (mentioning EFT, Transact First, and EnComPay in connection with Count V), ¶ 224 (mentioning Transact First in connection with Count VI), and ¶ 227 (mentioning EFT, Transact First, EnComPay, Mr. Hannelius, and Ms. Moore in connection with Count VI).

**E. Plaintiffs' Claim, in Count VIII, for violation of the Oklahoma Deceptive Trade Practices Act Fails Against the Individual Defendants on Due Process Grounds and Against All Defendants Because Plaintiffs and Defendants are not Competitors.**

  **i. The Application of Due Process and the Doctrine of Legislative Jurisdiction Mandate Dismissal of the Oklahoma Statutory Claim Against the Individual Defendants.**

Count VIII asserts an Oklahoma statutory claim against the Individual Defendants for whom there would be no personal jurisdiction in Oklahoma.[12] The Amended Complaint is not only devoid of any allegations linking any of the Individual Defendants to Oklahoma or linking the alleged wrongful conduct of these Defendants to Oklahoma, but the only jurisdictional allegations related to these Defendants clearly establish that they are either Maine or Florida Defendants with no ties to Oklahoma.[13] Requirements of constitutional due process accordingly mandate dismissal of this Oklahoma Statutory Claim against the Individual Defendants.

"Legislative jurisdiction is a type of jurisdiction "relevant to determining the extraterritorial reach of a statute." *In re Zantac (Ranitidine) Products Liab. Litig.*, 510 F. Supp. 3d 1175, 1201–02 (S.D. Fla. 2020) (citation omitted). A state's legislative jurisdiction is circumscribed by the Due Process Clause." *Herederos De Roberto Gomez Cabrera, LLC v. Teck Res. Ltd.*, 43 F.4th 1303, 1309 (11th Cir. 2022), *cert. denied,* 143 S. Ct. 736 (2023); *see also Watson v. Employers Liability Assurance Corp.,* 348 U.S. 66, 70 (1954) ("A state is without power to exercise 'extra territorial jurisdiction,' that is, to regulate and control activities wholly beyond its boundaries."). The general concept is that "if a State has only an insignificant contact with the parties and the occurrence or

---

[12] Personal jurisdiction arguments were raised at the outset by these Defendants before the Oklahoma District Court [DE 27 at pp. 3-7 (Moore, Shvartsman and Soulen); DE 44 at pp. 3-7 (Hannelius and Knight); and DE 47 at pp. 3-6 (Popova)]. Those arguments were never ruled upon as the Oklahoma District Court ultimately transferred this case to the Southern District of Florida.

[13] *See* Amended Complaint [DE 88] at ¶¶ 7 through 12.

transaction, application of its law is unconstitutional." *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 310–11 (1981).

> To determine legislative jurisdiction, that is, to confirm that the application of the [law in question] to [the party in question] does not offend due process, we look to choice-of-law and personal jurisdiction analyses. When choice-of-law issues arise in court, **to apply a state's substantive law in accordance with due process, "that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair.** And, when a court is considering its personal jurisdiction, the exercise of jurisdiction does not offend due process if the pertinent party has certain minimum contacts with [the jurisdiction] such that the maintenance of the [action] does not offend traditional notions of fair play and substantial justice.

*Am. Charities for Reasonable Fundraising Regulation, Inc. v. Pinellas Cnty.*, 221 F.3d 1211, 1216 (11th Cir. 2000) (emphasis added) (quotations omitted); *see also Allstate Ins. Co. v. Hague*, 449 U.S. 302, 308, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981). ("In deciding constitutional choice–of–law questions, whether under the Due Process Clause or the Full Faith and Credit Clause, this Court has traditionally examined the contacts of the State, whose law was applied, with the parties and with the occurrence or transaction giving rise to the litigation, the **Court has invalidated the choice of law of a State which has had no significant contact or significant aggregation of contacts, creating state interests, with the parties and the occurrence or transaction**.") (internal citations omitted) (emphasis added). As the Supreme Court recognized in evaluating two of its prior precedent, *Home Ins. Co. v. Dick*, 281 U.S. 397, 50 S.Ct. 338, 74 L.Ed. 926 (1930), and *John Hancock Mutual Life Ins. Co. v. Yates*, 299 U.S. 178, 57 S.Ct. 129, 81 L.Ed. 106 (1936): "*Dick* and *Yates* stand for the proposition that if a State has only an insignificant contact with the parties and the occurrence or transaction, application of its law is unconstitutional. *Dick* concluded that nominal residence – standing alone – was inadequate; *Yates* held that a postoccurrence change

Page 24 of 29

of residence to the forum State – standing alone – was insufficient to justify application of forum law." *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 310–11 (1981).

Here, not only does the Amended Complaint fail to establish any relationship between these Defendants and Oklahoma that would justify applicability of the Oklahoma Deceptive Trade Practices Act to them, but the Amended Complaint does not even contain a single allegation that Oklahoma would have personal jurisdiction over these Defendants or how such jurisdiction would be proper or appropriate. Thus, Count VIII should be dismissed as to the Individual Defendants.

### ii.   Since Plaintiffs and Defendants are not Competitors, Count VIII Fails to State a Claim against any of the Defendants.

Plaintiffs' claim for an alleged violation of the Oklahoma Deceptive Trade Practices Act, Okla. Stat. tit. 78, § 51 *et seq.* ("ODTPA") also fails because Defendants are not in competition with Plaintiffs. "It has been definitively established that [the Deceptive Trade Practices Act] ***protect[s] competing business interests*** and do[es] not present a basis for suit by consumers." *Conatzer v. American Mercury Insurance Company, Inc*., 15 P.3d 1252, 1254 (Okla. Civ. App. 2000) (emphasis supplied). Thus, in *Thomas v. Metropolitan Life Ins. Co*., 540 F. Supp. 2d 1212 (W. D. Okla. 2008) the court dismissed the plaintiffs' claim for violation of the ODTPA because "there are no allegations that plaintiffs are businesses in competition with [defendant] as required by the ODTPA." *Thomas*, 540 F. Supp. 2d at 1228. The District Court further denied leave to amend because "even if amendment were allowed, plaintiffs could not allege that they are competitors of [defendant]." *Id*.

Here, Plaintiffs fail to allege they are in competition with or have competing business interests against any of the Defendants. Moreover, based upon Plaintiffs' allegations of illegal activity, it is doubtful Plaintiffs would ever allege that they were in competition with Defendants.

Accordingly, Plaintiffs' Eighth claim should be dismissed, and such dismissal should be with prejudice.

### F.   Plaintiffs' Claim, in Count IX, for Violation of the Florida Deceptive and Unfair Trade Practices Act Fails to State a Claim.

In Count IX, Plaintiffs again refer to Individual Defendants and Certain Business Defendants without actually identifying a single one of the nineteen Defendants by name.  Because Count IX alleges violations of the Florida Deceptive and Unfair Trade Practices Act based on Plaintiffs allegations of fraud, Plaintiffs must satisfy Federal Rule of Civil Procedure 9(b)'s particularity requirement, discussed above with respect to Plaintiffs' fraud claims. *Z Indus. USA, LLC v. Circuitronix, LLC*, No. 0:17-CV-60727-UU, 2017 WL 11718026, at *8 (S.D. Fla. Oct. 5, 2017) ("[T]here is no question that [Plaintiff] is required to satisfy Rule 9(b)'s particularity requirement in pleading a FDUTPA claim based on allegedly fraudulently behavior."). By merely lumping all of the Defendants together without specifying which Defendant did what, Plaintiffs Amended Complaint falls woefully deficient of meeting this standard:

> Instead, Chrom alleges, with minimal detail, that the Zanini Entities, lumped together, "materially misrepresent[ed] the condition of the assets being purchase," failed to "disclose enormous environmental liabilities associates with the Z Mex factory in Mexico," and entered into the Closing Agreement with "no intention to comply with the non-competition and non-solicitation provisions" of this agreement. D.E. 16 ¶¶ 76-77. These allegations are not enough to satisfy Rule 9(b), especially in light of Eleventh Circuit precedent prohibiting Chrom from "lumping together multiple defendants ... as the sources of [different] misrepresentations."

*Z Indus. USA, LLC v. Circuitronix, LLC*, No. 0:17-CV-60727-UU, 2017 WL 11718026, at *8 (S.D. Fla. Oct. 5, 2017); *see also Altimas v. Whitney*, No. 209CV682FTM36SPC, 2010 WL 11507244, at *2 (M.D. Fla. Dec. 9, 2010) ("When fraud-based claims are levied against multiple defendants, such claims should inform each defendant as to the nature of his alleged participation in the fraud. *Ambrosia Coal & Construction Co. v. Morales*, 482 F.3d 1309, 1316–17 (11th Cir. 2007); *Brooks*,

116 F.3d at 1380–81. Thus, Rule 9(b) prohibits a plaintiff from merely 'lumping' multiple defendants together. *Ambrosia Coal & Construction Co., 482 F.3d at 1317; Cordova v. Lehman Bros.*, 526 F. Supp. 2d 1305, 1313 (S.D. Fla. 2007)."); *Band v. Ginn Companies, LLC*, No. 3:09-CV-792-J-25TEM, 2011 WL 13182849, at *2 (M.D. Fla. Sept. 8, 2011) (same). Because Plaintiffs violate this requirement, Count IX must be dismissed.

## V.     ALTERNATIVELY, THE COURT SHOULD ORDER THAT PLAINTIFFS PROVIDE A MORE DEFINITE STATEMENT.

In terms of a more definite statement, Fed. R. Civ. P. 12(e) provides: "A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response."

Initially, Defendants reiterate that the appropriate remedy given all of the issues discussed throughout this Motion is that the Amended Complaint should be dismissed. That being said, some of the difficulties discussed above would, at a minimum, require a more definite statement for Defendants to be able to adequately frame a responsive pleading without potentially prejudicing themselves.

The ones appropriate for a more definite include taking the steps necessary to resolve (a) the "shotgun" nature of Plaintiffs' Amended Complaint; (b) Defendants' difficulty in determining exactly "what" Plaintiffs specifically seek and from or "whom" they seek it; (c) Plaintiffs referring regularly throughout their Amended Complaint to the term "certain Business Defendants" without delineating which ones comprise the category of "certain"; and (d) to whom specifically Plaintiffs' refer with their vague and/or ambiguous references within the context of the claims for fraud (Count IV), negligent misrepresentation (Count V) and fraud and deceit (Count VI), and which

allegedly fraudulent or negligent actions were taken by whom, all with the particularity required by Fed.R.Civ.P. 9(b).

While Defendants recognize that Rule 12(e) is narrow in its application and that such motions are generally disfavored, one instance where it can be appropriate is in addressing the issues raised by a "shotgun" pleading. *James River Ins. Co. v. O'Gallagher LLC*, 340 F.R.D. 471, 473 (S.D. Fla. 2022) (noting options in responding to a shotgun pleading of moving for a more definite statement and moving to dismiss). Another is "when the request for a more definite statement is used to enforce the special pleading requirements of Rule 9(b)." Wright, Miller, & Kane, *Motion for a More Definite Statement—Scope of Amended Rule 12(e)*, 5C Fed. Prac. & Proc. Civ. § 1376 (3d ed.).

To be certain, Defendants do not seek here what they could obtain through discovery. They instead seek the information needed to frame a responsive pleading under the Federal Rules notice pleading standard. Unfortunately, Plaintiffs' Amended Complaint resents a situation where Defendants cannot respond in good faith to each and every allegation without running the risk of prejudicing themselves, either by not responding to allegations made against them, or responding to allegations not made against them. Accordingly, should the Court deny dismissal as sought, it should order a more definite statement pursuant to Fed.R.Civ.P. 12(e).

**[THIS SPACE INTENTIONALLY LEFT BLANK]**

WHEREFORE, Defendants respectfully request that this Honorable Court dismiss the Amended Complaint against them, and that such dismissal be with prejudice where so indicated, or, alternatively, order a more definite statement as to the issues sought, and that the Court further grant to Defendants such other relief as it deems just and proper.

Date: February 24, 2025

By:___ */s/ NEIL D. KODSI*_____
Neil D. Kodsi, Esquire
Florida Bar No.: 11255
NKodsi@FeldmanKodsi.com
**FELDMAN KODSI**
8325 NE 2nd Ave., Suite 204
Miami, FL 33138
Telephone: (305) 445-2005
*Counsel for Defendants*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 24th day of February, 2025, I electronically filed the foregoing with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

By: ___ */s/ NEIL D. KODSI*_____
Neil D. Kodsi, Esq.
Florida Bar No.: 11255
NKodsi@FeldmanKodsi.com
**FELDMAN KODSI**
8325 NE 2nd Ave., Suite 204
Miami, FL 33138
Telephone: (305) 445-2005